UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:24-cv-60546

PRIMEFLIGHT AVIATION SERVICES, INC., a foreign corporation,

    Plaintiff,

vs.

FENIX LOGISTIX, INC.,

    Defendant.
_____/

# COMPLAINT

    PrimeFlight Aviation Services, Inc. ("PrimeFlight"), by and through its attorneys, Morgan & Akins, PLLC, states by way of Complaint against Defendant, Fenix Logistix, Inc. ("Fenix"), as follows:

**Parties**

    1.    Plaintiff, PrimeFlight Aviation Services, Inc. ("PrimeFlight"), is a corporation organized under the laws of Delaware and with its principal place of business located in Sugar Land, Fort Bend County, Texas.

    2.    Defendant, Fenix Logistix, Inc. ("Fenix"), is a corporation organized under the laws of Florida and with its principal place of business located in Puyallup, Pierce County, Washington.

**Jurisdiction and Venue**

    3.    This Court has subject matter jurisdiction over this instant action pursuant to 28 U.S.C. § 1332(a)(1), because diversity of citizenship exists between PrimeFlight, on the one hand, and Defendant, on the other, and the amount in controversy, as determined by the monetary value of the claims presented, exceeds $75,000.00.

4. Venue is proper in this district as this is the judicial district in which a substantial part of the events giving rise to the claim occurred. *See* 28 U.S.C. 1391(b)(1).

**The SMF Agreement**

5. On or about March 23, 2021, Defendant, Fenix, entered into a "Maintenance Agreement for GSE Services," pursuant to which Fenix retained non-party, Global Aviation Services, LLC ("Global Aviation"), to provide certain services for Fenix at Sacramento International Airport (the "SMF Agreement"). A true, accurate, and complete copy of the SMF Agreement is attached hereto as Exhibit A.

6. Pursuant to the terms and conditions of the SMF Agreement, Fenix agreed to pay Global Aviation for services for various equipment owned, operated or controlled by Fenix at the Sacramento International Airport. (Ex. A).

7. The SMF Agreement set forth the rates and charges for the services that were to be provided. (Ex. A). In particular, the SMF Agreement provided, in pertinent part, as follows:

> 3. Rates and Charges:
>
> a. All services provided under this agreement will be invoiced on Time and Materials basis.
>
> b. $80.00 per hour for all labor requested during normal shop hours.
>
> c. $112.00 per hour for all labor outside of normal shop hours (listed below).
>
> d. Parts/Fluids and Supplies are all billable at standard cost plus 15% mark up.
>
> e. Customer provided parts used at no mark-up.
>
> f. Labor rates will increase 3% annually on January 1st.
>
> g. Written approval is required on all repair estimates over $500.00 (estimated total of Labor and Parts).
>
> h. Airport fees and or taxes are additional.

(Ex. A, ¶ 3).

8. The SMF Agreement further set forth the terms and conditions upon which payment was to be made. (Ex. A). In particular, the SMF Agreement provided, in pertinent part, as follows:

> 4. Terms of Payment:
>
> a. Invoices are payable net 30 of receipt.
>
> b. Credit card processing fee is 4.0%. Invoices will be sent bi-weekly or monthly.
>
> c. Services will be suspended if account is over 45 days past due.

(Ex. A, ¶ 4).

9. The SMF Agreement further provided that it was to last for one (1) year, at which point it would be automatically renewed for additional one (1) year terms unless cancelled by either party. (Ex. A, ¶ 7).

10. The SMF Agreement further provided that it was to be governed by and interpreted pursuant to the laws of Texas. (Ex. A, ¶ 8(b.)).

11. Pursuant to Texas law, a person may recover reasonable attorney's fees from a defendant, in addition to the amount of its claim, if the claim is for either a sworn account, or an oral or written contract.

**The FLL Agreement**

12. On or about April 12, 2022, Defendant, Fenix, entered into a "Maintenance Agreement for GSE Services," pursuant to which Fenix retained non-party, Global Aviation, to provide certain services for Fenix at Hollywood-Fort Lauderdale International Airport (the "FLL Agreement"). A true, accurate, and complete copy of the FLL Agreement is attached hereto as Exhibit B.

CASE NO.: 0:24-cv-60546

13. Pursuant to the terms and conditions of the FLL Agreement, Fenix agreed to pay Global Aviation for services for various equipment owned, operated or controlled by Fenix at the Hollywood-Fort Lauderdale International Airport. (Ex. B).

14. The FLL Agreement set forth the rates and charges for the services that were to be provided. (Ex. B). In particular, the FLL Agreement provided, in pertinent part, as follows:

> 3. Rates and Charges:
>
> a. All services provided under this agreement will be invoiced on a Time and Materials Basis.
>
> b. $89.50 per hour for all labor requested during normal shop hours.
>
> c. $125.30 per hour for all labor outside of normal shop hours (listed below) and 40 hours per week.
>
> d. Parts/Fluids and Supplies are all billable at standard cost plus 15% mark up.
>
> e. Customer provided parts used at no mark-up.
>
> f. Labor rates will be subject to an annual increase, starting on January 1, 2023.
>
> g. Written approval is required on all repair estimates over $500.00 (estimated total of Labor and Parts).
>
> h. Airport fees and or taxes are additional.

(Ex. B, ¶ 3).

15. The FLL Agreement further set forth the terms and conditions upon which payment was to be made. (Ex. B). In particular, the FLL Agreement provided, in pertinent part, as follows:

> 4. Terms of Payment:
>
> a. Invoices are payable net 30 of receipt.
>
> b. Credit card processing fee is 4.0%. Invoices will be sent bi-weekly or monthly.

        c.      Services will be suspended if account is over 45 days past due.

(Ex. B, ¶ 4).

16.    The FLL Agreement further provided that it was to last for one (1) year, at which point it would be automatically renewed for additional one (1) year terms unless cancelled by either party. (Ex. B, ¶ 7).

17.    The FLL Agreement further provided that it was to be governed by and interpreted pursuant to the laws of Texas. (Ex. B, ¶ 8(b.)).

18.    Pursuant to Texas law, a person may recover reasonable attorney's fees from a defendant, in addition to the amount of its claim, if the claim is for either a sworn account, or an oral or written contract.

**The SJC Agreement**

19.    On or about April 29, 2022, Defendant, Fenix, entered into a "Maintenance Agreement for GSE Services," pursuant to which Fenix retained non-party, Global Aviation, to provide certain services for Fenix at San Jose Mineta International Airport (the "SJC Agreement"). A true, accurate, and complete copy of the SJC Agreement is attached hereto as Exhibit C.

20.    Pursuant to the terms and conditions of the SJC Agreement, Fenix agreed to pay Global Aviation for services for various equipment owned, operated or controlled by Fenix at the San Jose Mineta International Airport. (Ex. C).

21.    The SJC Agreement set forth the rates and charges for the services that were to be provided. (Ex. C). In particular, the SJC Agreement provided, in pertinent part, as follows:

    3.    Rates and Charges:

        a.    All services provided under this agreement will be invoiced on a Time and Materials Basis.

    b.    $80.00 per hour for all labor requested during normal shop hours.

    c.    $112.00 per hour for all labor outside of normal shop hours (listed below) and 40 hours per week.

    d.    Parts/Fluids and Supplies are all billable at standard cost plus 15% mark up.

    e.    Customer provided parts used at no mark-up.

    f.    Labor rates will be subject to an annual increase, starting on January 1, 2023.

    g.    Written approval is required on all repair estimates over $500.00 (estimated total of Labor and Parts).

    h.    Airport fees and or taxes are additional.

(Ex. C, ¶ 3).

22.    The SJC Agreement further set forth the terms and conditions upon which payment was to be made. (Ex. C). In particular, the SJC Agreement provided, in pertinent part, as follows:

    4.    Terms of Payment:

    a.    Invoices are payable net 30 of receipt.

    b.    Credit card processing fee is 4.0%. Invoices will be sent bi-weekly or monthly.

    c.    Services will be suspended if account is over 45 days past due.

(Ex. C, ¶ 4).

23.    The SJC Agreement further provided that it was to last for one (1) year, at which point it would be automatically renewed for additional one (1) year terms unless cancelled by either party. (Ex. C, ¶ 7).

24.    The SJC Agreement further provided that it was to be governed by and interpreted pursuant to the laws of Texas. (Ex. C, ¶ 8(b.)).

25. Pursuant to Texas law, a person may recover reasonable attorney's fees from a defendant, in addition to the amount of its claim, if the claim is for either a sworn account, or an oral or written contract.

**The PDX Agreement**

26. On or about June 1, 2022, Fenix entered into a "Ground Support Equipment Fueling Agreement," pursuant to which Fenix retained PrimeFlight to perform fuel service operations for Fenix at Portland International Airport (the "PDX Agreement"). A true, accurate, and complete copy of the PDX agreement is attached hereto as Exhibit D.

27. Pursuant to the terms and conditions of the PDX Agreement, Fenix agreed to pay PrimeFlight for gasoline and diesel fueling services for various equipment owned, operated or controlled by Fenix at the Portland International Airport. (Ex. D).

28. The PDX Agreement set forth the rates and charges for the services that were to be provided. (Ex. D). In particular, the Portland Agreement provided, in pertinent part, as follows:

> Rate:   Gasoline – Cost of Product plus $1.50 per Gallon
>
> Diesel – Cost of Product plus $1.50 per Gallon

(Ex. D, Shed. A.1)

29. The PDX Agreement further set forth the terms and conditions upon which payment was to be made. (Ex. D). In particular, the PDX Agreement provided, in pertinent part, as follows:

> ARTICLE IV- PAYMENT
>
> Charges for Services rendered by HANDLING COMPANY shall be paid by BUYER in United States currency, promptly upon the presentation of invoices for such charges. HANDLING COMPANY will bill monthly, or within a lesser period of time, for Services rendered in accordance with the charges listed in the Schedule attached hereto. In the event BUYER fails to pay an invoice within thirty (30) days of date of invoice, HANDLING COMPANY may charge one and one-half percent (1-1/2%) on the unpaid balance per month. In addition, HANDLING COMPANY may place BUYER

> on C.O.D., and/or cancel or suspend Services. HANDLING COMPANY reserves the right to apply any payments made to any invoice or account due HANDLING COMPANY by BUYER whenever payment is remitted and whether payment is denoted for a specific invoice.

(Ex. D, p. 4).

30. The PDX Agreement further provided that it was to last indefinitely, absence termination by either party. (Ex. D, p. 2).

31. The PDX Agreement further provided that it was to be governed by and interpreted pursuant to the laws of the State of performance, in this case, Oregon. (Ex. D, p. 6).

32. The PDX Agreement further provided that the prevailing party, in connection with litigation arising from the PDX Agreement, would be entitled to recover reasonable attorneys' fees and court costs. (Ex. D, p. 5).

**The Assignment**

33. On or about April 2, 2024, Global Aviation executed an assignment pursuant to which all rights, obligations, interests and claims it possessed were transferred to PrimeFlight. A true, accurate and complete copy of the Assignment is attached hereto as Exhibit E.

## COUNT I – BREACH OF CONTRACT
(SMF Agreement)

34. PrimeFlight adopts and incorporates by reference paragraphs 1 through 4 and 5 through 11, and paragraph 33, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe the SMF Agreement, and the Assignment, as and for paragraph 34 of this Count I as though fully set forth herein.

35. After March 23, 2021, Fenix requested that Global Aviation provide services.

36. Global Aviation performed all work and services requested. Work Order Summaries reflecting the the work performed pursuant to the SMF Agreement are attached hereto as Exhibit F.

37. Fenix, in breach and violation of the SMF Agreement, has failed to pay for the services and goods provided.

38. PrimeFlight, as the assignee of Global Aviation, has been damaged as a result of Fenix's breach in that it has not been paid the sums due and owing under the SMF Agreement. In particular, Fenix has failed to pay the total sum of Thirty Thousand Two Hundred Fifty-Two Dollars and 24/100 ($30,252.24), which is due, owing, and outstanding.

39. PrimeFlight, as the assignee of Global Aviation, has retained the services of the undersigned counsel and has promised to pay a reasonable fee for said services. Texas law provides for an award of attorneys' fees to the prevailing party in any litigation thereunder.

WHEREFORE, PrimeFlight Aviation Services, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendant, Fenix Logistix, Inc., in the amount of Thirty Thousand Two Hundred Fifty-Two Dollars and 24/100 ($30,252.24), plus pre-judgment interest and associated costs, and/or for whatever other relief this Court deems just and proper.

### COUNT II – BREACH OF CONTRACT
(FLL Agreement)

40. PrimeFlight adopts and incorporates by reference paragraphs 1 through 4 and 12 through 18, and paragraph 33, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe the FLL Agreement, and the Assignment, as and for paragraph 40 of this Count II as though fully set forth herein.

41. After April 12, 2022, Fenix requested that Global Aviation provide services.

42. Global Aviation performed all work and services requested. Work Order Summaries reflecting the for the work performed pursuant to the FLL Agreement are attached hereto as Exhibit G.

42. Fenix, in breach and violation of the FLL Agreement, has failed to pay for the services and goods provided.

43. PrimeFlight, as the assignee of Global Aviation, has been damaged as a result of Fenix's breach in that it has not been paid the sums due and owing under the FLL Agreement. In particular, Fenix has failed to pay the total sum of Eight Thousand Two Hundred Nine Dollars and 79/100 ($8,209.79), which is due, owing, and outstanding.

44. PrimeFlight, as the assignee of Global Aviation, has retained the services of the undersigned counsel and has promised to pay a reasonable fee for said services. Texas law provides for an award of attorneys' fees to the prevailing party in any litigation thereunder.

WHEREFORE, PrimeFlight Aviation Services, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendant, Fenix Logistix, Inc., in the amount of Eight Thousand Two Hundred Nine Dollars and 79/100 ($8,209.79), plus pre-judgment interest and associated costs, and/or for whatever other relief this Court deems just and proper.

### COUNT III – BREACH OF CONTRACT
(SJC Agreement)

45. PrimeFlight adopts and incorporates by reference paragraphs 1 through 4 and 19 through 25, and paragraph 33, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe the SJC Agreement, and the Assignment, as and for paragraph 45 of this Count III as though fully set forth herein.

46. After April 29, 2022, Fenix requested that Global Aviation provide services.

47. Global Aviation performed all work and services requested. Work Order Summaries reflecting the work performed pursuant to the SJC Agreement are attached hereto as Exhibit H.

48. Fenix, in breach and violation of the SJC Agreement, has failed to pay for the services and goods provided.

49. PrimeFlight, as the assignee of Global Aviation, has been damaged as a result of Fenix's breach in that it has not been paid the sums due and owing under the SJC Agreement. In particular, Fenix has failed to pay the total sum of Fifty-One Thousand Nine Hundred Ninety-Five Dollars and 01/100 ($51,995.01).

50. PrimeFlight, as the assignee of Global Aviation, has retained the services of the undersigned counsel and has promised to pay a reasonable fee for said services. Texas law provides for an award of attorneys' fees to the prevailing party in any litigation thereunder.

WHEREFORE, PrimeFlight Aviation Services, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendant, Fenix Logistix, Inc., in the amount of Fifty-One Thousand Nine Hundred Ninety-Five Dollars and 01/100 ($51,995.01), plus pre-judgment interest and associated costs, and/or for whatever other relief this Court deems just and proper.

## COUNT IV – BREACH OF CONTRACT
(PDX Agreement)

51. PrimeFlight adopts and incorporates by reference paragraphs 1 through 4 and 26 through 32, and paragraph 33, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe the PDX Agreement, and the Assignment, as and for paragraph 51 of this Count IV as though fully set forth herein.

52. After June 1, 2022, Fenix requested that Global Aviation provide services and goods under the PDX Agreement.

53. Global Aviation performed all work and services requested. Work Order Summaries reflecting the for the work performed pursuant to the PDX Agreement are attached hereto as Exhibit I.

54. Fenix, in breach and violation of the SJC Agreement, has failed to pay for the services and goods provided.

55. PrimeFlight, as the assignee of Global Aviation, has been damaged as a result of Fenix's breach in that it has not been paid the sums due and owing under the PDX Agreement.

56. PrimeFlight, as the assignee of Global Aviation, has retained the services of the undersigned counsel and has promised to pay a reasonable fee for said services. The PDX Agreement provides for an award of attorneys' fees to the prevailing party in any litigation thereunder.

WHEREFORE, PrimeFlight Aviation Services, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendant, Fenix Logistix, Inc., in the amount of Sixty-Three Thousand One Hundred Twenty-Two Dollars and 48/100 ($63,122.48), plus pre-judgment interest and associated costs, and/or for whatever other relief this Court deems just and proper.

**COUNT V – SUIT ON SWORN ACCOUNT**
(SMF, FLL, and SJC – Texas Law)

57. PrimeFlight adopts and incorporates by reference paragraphs 1 through 25, and paragraph 33, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, describe the SMF Agreement, the FLL Agreement, and the SJC Agreement, as paragraph 57 of this Count V as though fully set forth herein.

58. This Count is an action founded upon an open account or other claim for goods and services and it's a claim for liquidated money demand based upon business dealings between the

parties, as well as for labor done and materials furnished, on which a systematic record has been kept by PrimeFlight and its assignor, Global Aviation.

59. PrimeFlight's assignor, Global Aviation, provided the services requested by Fenix Logistix pursuant to the terms contracted for in the Agreements between the parties, and Fenix Logistix was charged the agreed rates for such services.

60. PrimeFlight sent Fenix Logistix an email on February 29, 2024, inquiring about the outstanding accounts receivable owed. PrimeFlight reiterated in this email that it had been attempting to collect these balances for several months, with little success.

61. Fenix Logistix received correspondence from PrimeFlight on March 12, 2024. See Exhibit J. The email included a summary of the outstanding invoices, inclusive of those due and owing pursuant to the SMF, FLL, and SJC Agreements, totaling $153,579.52, inclusive of the PDX Agreement Charges. This correspondence served as the final demand that Fenix Logistix pay the total amount due to PrimeFlight by March 15, 2024.

62. On March 14, 2024, Fenix Logistix sent correspondence to PrimeFlight's assignor, stating that Fenix Logistix was not in a position to pay the balance of the outstanding invoices. Fenix Logistix then claimed that it only received three of the twelve FLL invoices from PrimeFlight's assigno before March 14, 2024.  Additionally, Fenix Logistix claimed that it allegedly did not receive a single SJC invoice or any of the eight PDX invoices from PrimeFlight's assignor before March 14, 2024. Fenix Logistix stated that these invoices needed to be approved by its GSE manager before the invoices could be paid.

63. Fenix Logistix asked for a week's extension to pay the outstanding invoices. PrimeFlight's assignor responded that Fenix Logistix needed to address the outstanding invoices and that the net of the balances needed to be paid by the close of business on March 15, 2024.

Further, PrimeFlight's assignor explained that if Fenix Logistix paid the net of the balances by March 15, 2024, an extension for the remaining balances would be possible. Fenix Logistix did not meet the offered accommodation, made no payments, and thus necessitated this lawsuit.

64. Despite proper demand, Fenix Logistix has wholly failed and refused to perform. The services were Fenix Logistix's request, PrimeFlight's assignor provided its services. Fenix Logistix has failed and refused to pay the agreed charges.

65. Fenix Logistix requested PrimeFlight's assignor, Global Aviation, to provide all scheduled and unscheduled maintenance on an open account. Fenix approved and accepted the maintenance services of PrimeFlight's assignor, Global Aviation, and became bound to pay PrimeFlight for such maintenance services, which were priced according to the parties' agreement, and were the usual, customary, and standard charges for the maintenance services.

66. PrimeFlight, via its assignor, Global Aviation, has a detailed description of the parties' open account with respect to the SMF, FLL, and SJC Agreements ("the Account"). See Exhibit K. The Account consists of invoices that accurately set forth the maintenance services PrimeFlight's assignor, Global Aviation, provided to Fenix Logistix, the dates of the performance of the maintenance services, and the amounts billed to Fenix Logistix for the maintenance services. The Service Agreements all set forth Fenix Logistix's agreement to pay PrimeFlight for the maintenance services it provided.

67. The account represents a record of the transactions involving the maintenance services and is the same or similar to records PrimeFlight systematically keeps in the ordinary course of business.

68. PrimeFlight's claim is just and true, it is due, and all just and lawful offsets, payments, and credits have been allowed.

69. The principal balance due to PrimeFlight on the accounts subject to Texas law is Ninety Thousand Four Hundred Fifty-Seven Dollars and 04/100 ($90,457.04).

WHEREFORE, PrimeFlight Aviation Services, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendant, Fenix Logistix, Inc., in the amount of Ninety Thousand Four Hundred Fifty-Seven Dollars and 04/100 ($90,457.04), plus pre-judgment interest and associated costs, and/or for whatever other relief this Court deems just and proper.

**COUNT VI – ACCOUNT STATED**
(PDX – Oregon Law)

70. PrimeFlight adopts and incorporates by reference paragraphs 1 through 4, and 26 through 32, and paragraph 33, above, which identify the parties, set forth the basis for this Court's exercise of jurisdiction and venue, and describe the PDX Agreement, as paragraph 70 of this Count VI as though fully set forth herein.

71. This Count is an action founded upon an open account or other claim for goods and services and it's a claim for liquidated money demand based upon business dealings between the parties, as well as for labor done and materials furnished, on which a systematic record has been kept by PrimeFlight and its assignor, Global Aviation.

72. PrimeFlight's assignor, Global Aviation, provided the services requested by Fenix Logistix pursuant to the terms contracted for in the PDX Agreement between the parties, and Fenix Logistix was charged the agreed rates for such services.

73. PrimeFlight sent Fenix Logistix an email on February 29, 2024, inquiring about the outstanding accounts receivable owed. PrimeFlight reiterated in this email that it had been attempting to collect these balances for several months, with little success.

74. Fenix Logistix received correspondence from PrimeFlight on March 12, 2024. See Exhibit J. The email included a summary of the outstanding invoices, totaling $153,579.52,

inclusive of the other Agreement Charges. This correspondence served as the final demand that Fenix Logistix pay the total amount due to PrimeFlight's assignor, by March 15, 2024.

75. On March 14, 2024, Fenix Logistix sent correspondence to PrimeFlight's assignor, stating that Fenix Logistix was not in a position to pay the balance of the outstanding invoices. Fenix Logistix then claimed that it only received three of the twelve FLL invoices from PrimeFlight's assignor before March 14, 2024. Additionally, Fenix Logistix claimed that it allegedly did not receive a single SJC invoice or any of the eight PDX invoices from PrimeFlight's assignor before March 14, 2024. Fenix Logistix stated that these invoices needed to be approved by its GSE manager before the invoices could be paid.

76. Fenix Logistix asked for a week's extension to pay the outstanding invoices. PrimeFlight's assignor responded that Fenix Logistix needed to address the outstanding invoices and that the net of the balances needed to be paid by the close of business on March 15, 2024. Further, PrimeFlight's assignor explained that if Fenix Logistix paid the net of the balances by March 15, 2024, an extension for the remaining balances would be possible. Fenix Logistix did not meet the offered accommodation, made no payments, and thus necessitated this lawsuit.

77. Despite proper demand, Fenix Logistix has wholly failed and refused to perform. The services were Fenix Logistix's request, PrimeFlight's assignor provided its services. Fenix Logistix has failed and refused to pay the agreed charges.

78. Fenix Logistix requested PrimeFlight's assignor, Global Aviation, to provide all scheduled and unscheduled maintenance on an open account. Fenix approved and accepted the maintenance services of PrimeFlight's assignor, Global Aviation, and became bound to pay PrimeFlight for such maintenance services, which were priced according to the parties' agreement, and were the usual, customary, and standard charges for the maintenance services.

78. PrimeFlight, via its assignor, Global Aviation, has a detailed description of the parties' open account ("the Account"). *See* Exhibit L. The Account consists of invoices that accurately set forth the maintenance services PrimeFlight's assignor, Global Aviation, provided to Fenix Logistix at PDX, the dates of the performance of the maintenance services, and the amounts billed to Fenix Logistix for the maintenance services. The Service Agreements all set forth Fenix Logistix's agreement to pay PrimeFlight for the maintenance services it provided.

79. The account represents a record of the transactions involving the maintenance services and is the same or similar to records PrimeFlight's assignor systematically keeps in the ordinary course of business.

80.. PrimeFlight's claim is just and true, it is due, and all just and lawful offsets, payments, and credits have been allowed.

81 The principal balance due to PrimeFlight on the account for services rendered at PDX is Sixty-Three Thousand One Hundred Twenty-Two Dollars and 48/100 ($63,122.48).

WHEREFORE, PrimeFlight Aviation Services, Inc., respectfully requests that this Court enter judgment in its favor and against the Defendant, Fenix Logistix, Inc., in the amount of Sixty-Three Thousand One Hundred Twenty-Two Dollars and 48/100 ($63,122.48), plus pre-judgment interest and associated costs, and/or for whatever other relief this Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

CASE NO.: 0:24-cv-60546

Dated: April 5, 2024                                                        Respectfully submitted,

*/s/ Patrick K. Dahl*
**Patrick K. Dahl, Esquire (084109)**
pdahl@morganakins.com
Florida Bar No. 084109
**Michelle Arau, Esquire (1049757)**
marau@morganakins.com
Florida Bar No. 1049757
**MORGAN & AKINS, PLLC**
*Attorneys for PrimeFlight Aviation Services, Inc.*
501 E. Las Olas Boulevard, Suite 300
Ft. Lauderdale, FL 33301
Phone: (754) 255-3010
Fax: (215) 600-1303